IN THE UNITED STATES DISTRICT COURT OF ARKANSAS
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

SHEILA MAIN                                                                            PLAINTIFF

v.                          CASE NO. 4:17cv605-SWW

OZARK HEALTH, INC.                                      DEFENDANTS

## COMPLAINT

The Plaintiff, Sheila Main, represented by her attorneys, Baxter, Jewell & Dobson, P.A., states the following as her Complaint against the Defendant, Ozark Health, Inc.:

## PARTIES

1. Plaintiff Sheila Main is a resident and citizen of Van Buren County, Arkansas. Sheila Main is 63 years old; her date of birth is March 21, 1954.

2. Defendant Ozark Health, Inc. ("Ozark") is an Arkansas Corporation and has its principal place of business in Clinton, Arkansas. Ozark does business in Clinton, Arkansas using the fictitious name of Ozark Health Medical Center.

## JURISDICTION AND VENUE

3. This Court has personal jurisdiction over Defendant Ozark. It is engaged in the business of health related services from its Clinton, Arkansas headquarters, using among other names, Ozark Health Medical Center.

1

4. This Court has subject matter jurisdiction over this matter pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as codified, 42 U.S.C. §§ 2000e to 2000e-17; the Age Discrimination in Employment Act ("ADEA"), as codified, 29 U.S.C. §§ 621 to 634; the Equal Pay Act of 1963, as codified, 29 U.S.C. §206 ("EPA"); the Americans with Disabilities Act ("ADA"), as codified, 42 U.S.C. §§ 12112 to 12117; and under the Arkansas Civil Rights Act of 1993, as codified, Ark. Code Ann. §§16-123-101 et seq. ("ACRA").

5. This Court is the proper venue for this matter pursuant to 28 U.S.C. § 1391 because Ozark has its "principal office" in Clinton, Arkansas and Main resides in Clinton, Arkansas.

## FACTS

6. Ozark employed 20 or more employees at all relevant times, but in particular, in 2014 and 2015.

7. Main possesses a Bachelor's Degree in Radiologic Technology from the University of Arkansas for Medical Sciences.

8. Main possesses a Master's Degree in Management from Boston University.

9. Main possesses licenses and certifications from various agencies and institutes.

10. From 1986 until 2005, Main was the Clinical Manager at Saint Francis Hospital Breast Center, in Tulsa, Oklahoma.

11. Main began her employment with Ozark in October 2005 as Radiology Manager. Main was Radiology Manager with Ozark until June 3, 2015, when Ozark unlawfully terminated her employment.

12. In her position as Radiology Manager, Main supervised multiple employees, including as of June 3, 2015, 38 year old male, Jamie Cates.

13. After Main was hired, she discovered that she was hired for less pay than that of her male predecessor, Aubrey Allensworth ("Allensworth"). Unlike Main, Allensworth did not hold an advanced degree of any kind.

14. Darrell Moore ("Moore") became Chief Operating Officer/Director of Ancillary Services for Ozark in approximately 2012. Moore became Main's supervisor in approximately 2012. Moore is younger than Main.

15. David Deaton ("Deaton") became Chief Executive Officer for Ozark in 2012. Deaton became Moore's supervisor on approximately June 25, 2012. Deaton is approximately 54 years old.

16. Throughout her employment with Defendant, her performance met or exceeded expectations, which is reflected by her lengthy tenure, recognition, and significant compensation.

17.  For example, in February 2012, Main's supervisor, Harriet Guglielmo, ranked Main as "Exceeds the Standard" in all categories. Main did not receive a salary increase in 2014, but only because Ozark had a pay freeze in effect for the entire facility.

18.  In December 2012, Moore gave Main a three percent (3%) salary increase based upon Main's annual Employee Performance Evaluation.

19.  In December 2013, Main's supervisor, Moore, ranked Main as "Exceeds Expectations" in six (6) out of ten (10) categories and "Meets Expectations" in the remaining four (4) categories.

20.  On approximately December 13, 2013, Moore gave Main a three percent (3%) salary increase based upon her annual Employee Performance Evaluation, retroactive to November 4, 2013.

21.  On approximately December 13, 2013, Moore gave Main a two percent (2%) salary increase based upon Main's "leadership certificate", retroactive to December 1, 2013.

22.  In October 2014, Main's supervisor, Moore, ranked Main as "Exceeds Expectations" in seven (7) out of ten (10) categories and "Meets Expectations" in the remaining three (3) categories on Main's annual Employee Performance Evaluation. Main's 2014 annual Employee Performance Evaluation exceeded Main's 2013 annual Employee Performance Evaluation.

23.   In October 2014, based upon her annual Employee Performance Evaluation, Moore gave Main a two percent (2%) salary increase.

24.   Moore did not evaluate Main in 2015 prior to Main's June 3, 2015, termination of employment.

25.   After Deaton became CEO, he began terminating numerous female managers over 40. Deaton unfairly pressured and disciplined other female managers over 40 who then resigned.

26.   On June 3, 2015, unexpectedly and without explanation, Moore told Main that Main's employment was being terminated because the facility wanted to "go in a different direction." Sally Cassell ("Cassell"), Human Resources Director for Ozark, participated in the meeting. Moore told Main that Ozark was giving Main the option of resignation or termination of employment, both effective that same day. Moore asked Main to sign a letter of resignation that day. Main refused to sign. Following Main's refusal, Moore terminated Main's employment on June 3, 2015.

27.   Moore told Main that if she resigned, Ozark would allow Main to perform mammographies on an as-needed basis and Ozark would not challenge Main receiving unemployment benefits.

28.   Main met with Moore again on June 4, 2015, and refused to retire or accept a demotion. Main told Moore that she had had no coaching, no mentoring, no direction, no counseling reports, and very good performance appraisals. Both

Cassell and Moore told Main that it was not true about notes in her file. Cassell and Moore advised Main there were notes in her files. Main told Cassell and Moore that Ozark might have notes in her file but she had not seen or signed the notes. Based upon Moore and Cassell's comments, Main immediately asked Cassell for a copy of her file. Cassell denied the request and advised Main that Main's personnel file was the property of Ozark.

29. Upon information and belief, Main's personnel file does not contain any counseling or disciplinary documents that Main signed.

30. In fact, Cassell contrived an Employee Disciplinary Report nine (9) days after Main's termination, i.e., on June 14, 2015, to make it appear that Ozark disciplined Main in June of 2013, two (2) years earlier. A copy of the June 14, 2015, Employee Disciplinary Report, purportedly counseling Main for an event that occurred on June 5, 2013, is attached and marked as **Exhibit 1**. Main did not sign the June 14, 2015, Employee Disciplinary Report. Moore did not sign the June 14, 2015, Employee Disciplinary Report.

31. Moore replaced Main with Main's former subordinate, 38 year old male Radiology Technologist, Jamie Cates. Jamie Cates did not possess either a Bachelor's or Master's degree in radiology and had no management or supervisory experience. In fact, Main trained Jamie Cates for two (2) years while she supervised him.

32. Following her termination, Main consulted with an attorney, Kent Tester, who sent a letter to Deaton on June 5, 2015. A copy of Kent Tester's letter is attached and marked as **Exhibit 2**. In his June 5, 2015, letter, Tester notified Deaton that Ozark should not destroy any evidence applicable to Main, her employment, or the termination of her employment.

33. On June 11, 2015, Deaton sent a letter to Kent Tester, withdrawing Moore's offer to Main to perform mammographies on an as-needed basis and offering to provide a "favorable" letter of reference as a technologist. A copy of Deaton's letter is attached and marked as **Exhibit** 3.

34. During her employment with Ozark, Main never received any written discipline from Ozark.

35. During her employment with Ozark, Ozark never communicated to Main that she was being disciplined or counseled.

34. Neither Moore nor Cassell gave Main written documentation to sign confirming any verbal discipline from Ozark.

35. Neither Moore nor Cassell gave Main written documentation confirming any verbal discipline from Ozark.

36. At certain times during her tenure as Radiology Manager, the Radiology Department met or exceeded certain performance criteria set by Ozark.

37. During her tenure as Radiology Manager, the Radiology Department met or exceeded certain quality performance criteria set by Ozark and regulators.

38. From 2012 through 2015, other female management employees were terminated and replaced by males.

39. On November 24, 2015, Main filed a Charge with the Equal Employment Opportunity Commission (EEOC) alleging sex discrimination, age discrimination, disability discrimination, and a violation of the EPA.

40. On June 23, 2017, the EEOC issued a Dismissal and Notice of Rights to Main, a copy of which is attached and marked as **Exhibit 4**.

### COUNT 1: SEX DISCRIMINATION BY DEFENDANT OZARK IN VIOLATION OF TITLE VII

41. Main incorporates by reference the allegations contained in Paragraphs 1- 40 of this Complaint.

42. Main is a female.

43. Main met or exceeded the reasonable expectations of Ozark.

44. Ozark discharged Main.

45. Main's sex was a motivating factor in Ozark's decision.

46. Therefore, Ozark violated Title VII.

### COUNT 2: SEX DISCRIMINATION BY DEFENDANT OZARK IN VIOLATION OF THE ACRA

47. Main incorporates by reference the allegations contained in Paragraphs 1- 46 of this Complaint.

48. Main is a female.

49. Main met or exceeded the reasonable expectations of Ozark.

50. Ozark discharged Main.

51. Main's sex was a motivating factor in Ozark's decision.

52. Therefore, Ozark violated the ACRA.

## COUNT 3: AGE DISCRIMINATION BY DEFENDANT OZARK IN VIOLATION OF THE ADEA

53. Main incorporates by reference the allegations contained in Paragraphs 1- 52 of this Complaint.

54. Main is 63 years old. Main was 61 when she was wrongfully discharged.

55. Main met or exceeded the reasonable expectations of Ozark.

56. Ozark discharged Main.

57. Ozark replaced Main with Main's former subordinate, approximately 38 year old Radiology Technologist, Jamie Cates.

58. Main's age was the determining or motivating factor in Ozark's decision to discharge her.

59. Ozark has violated the ADEA.

## COUNT 4: DISABILITY DISCRIMINATION BY DEFENDANT OZARK IN VIOLATION OF THE ADA

60. Main incorporates by reference the allegations contained in Paragraphs 1-59 of this Complaint.

61. Main suffers from a condition, Rheumatoid Arthritis, which qualifies as a disability under the ADA.

62. Main met or exceeded the reasonable expectations of Ozark.

63. Ozark discharged Main.

64. Ozark discharged Main because she was disabled or because Ozark regarded Main as disabled.

65. Ozark denied Main a reasonable accommodation under the ADA. Main asked for intermittent leave for required rest needed for mitigation of her Rheumatoid Arthritis symptoms, including fatigue, joint pain, and inflammation. Ozark denied the request for intermittent leave. Main also needed assistance with patient lifting and vein connection. While radiology staff respected Main's limitations and assisted her, Ozark management did not.

66. Main's disability or regarded disability was the motivating factor in Ozark's decision to discharge her.

67. Ozark has violated the ADA.

## COUNT 5: DISABILITY DISCRIMINATION BY DEFENDANT OZARK IN VIOLATION OF THE ACRA

68. Main incorporates by reference the allegations contained in Paragraphs 1-67 of this Complaint.

69. Main suffers from a condition, Rheumatoid Arthritis, which qualifies as a disability under the ACRA.

70. Main met or exceeded the reasonable expectations of Ozark.

71. Ozark discharged Main.

72. Ozark discharged Main because she was disabled or because Ozark regarded Main as disabled.

73. Ozark denied Main a reasonable accommodation under the ACRA. Main also needed assistance with patient lifting and vein connection. Main asked for intermittent leave for required rest needed for mitigation of her Rheumatoid Arthritis symptoms, including fatigue, joint pain, and inflammation. Ozark denied the request for intermittent leave. While radiology staff respected Main's limitations, Ozark management did not.

74. Main's disability or regarded disability was the motivating factor in Ozark's decision to discharge her.

75. Ozark has violated the ACRA.

### COUNT 6: EQUAL PAY DISCRIMINATION BY DEFENDANT OZARK IN VIOLATION OF THE EPA

76. Main incorporates by reference the allegations contained in Paragraphs 1-75 of this Complaint.

77. After Main was hired, she discovered that she was hired for less pay than that of her male predecessor, Allensworth.

78. Because Main initially received less compensation than her male predecessor, she was consistently paid less than a male.

79. Ozark has violated the EPA.

## DAMAGES

80. Main is entitled to compensatory damages, including back pay, and for emotional distress.

81. Main is entitled to reinstatement.

82. Main is entitled to an award for front pay.

83. Main is entitled to an award for liquidated damages

84. Main is entitled to an award for punitive damages.

85. Main is entitled to an award for reasonable attorney's fees and costs.

## DEMAND FOR JURY

86. Main demands a jury trial on all claims to which she is entitled to a jury trial.

WHEREFORE, Plaintiff Sheila Main prays for the following relief in this matter:

    a)    a finding that Ozark discharged her in violation of Title VII;

b)   a finding that Ozark discharged her in violation of the ACRA for sex discrimination;

c)   a finding that Ozark discharged her in violation of the ADEA;

d)   a finding that Ozark discharged her in violation of the ADA;

e)   a finding that Ozark discharged her in violation of the ACRA for disability discrimination;

f)   a finding that Ozark violated the EPA;

g)   a judgment in favor of Main and against Defendant Ozark on all counts;

h)   an award for compensatory damages, including back pay and emotional distress;

i)   an award for reasonable front pay;

j)   an award for liquidated damages;

k)   an award for punitive damages;

l)   an award for reasonable attorney's fees and costs; and

m)   all other relief to which she is entitled.

Respectfully submitted,

By: _____
Allen C. Dobson, ABN 85040
BAXTER, JEWELL & DOBSON, P.A.
One Information Way, Suite 210
Little Rock, Arkansas 72201

Tel: 501-664-9555, Fax: 501-664-9559
E-mail: adobson@bjd-law.com

*Attorneys for Plaintiff Sheila Main*

# Employee Disciplinary Report

**OZARK HEALTH**
PO Box 206 • Clinton, AR 72031
501-745-7000

COPY TO: ☐ Employee  ☐ Employee's Representative  ☐ Other _____

**NAME:** Main, Sheila

**DEPARTMENT:** _____

**DIVISION:** _____

**IDENTIFICATION NUMBER:** _____

**INCIDENT DATE:** 6/5/13

**INCIDENT TIME:** _____

## Nature of Incident

☐ 1. Unexcused Absence
☐ 2. Tardiness
☐ 3. Drinking/drugs while on duty
☐ 4. Threatening or engaging in violence
☐ 5. Dishonesty
☐ 6. Lack of cooperation/teamwork
☐ 7. Failure to follow Instructions
☐ 8. Harassment
☐ 9. Leaving without permission
☐ 10. Theft
☐ 11. Substandard work
☐ 12. Substandard housekeeping
☐ 13. Reporting under the influence of alcohol/drugs
☐ 14. Violation of safety rules
☐ 15. Carelessness
☐ 16. Destruction of company property
☐ 17. Improper conduct
☐ 18. Violation of company rules of conduct (Refer to specific rule, if applicable)
☐ 19. Other _____

Facts of the incident: *SEE ATTACHED*

Witnesses: _____

Employee's comments: _____

This report is to be made part of the official record of the above-mentioned employee.

Action to be taken: ☐ Warning   ☐ Suspension   ☐ Final Warning   ☐ Termination

Timetable for improvement: ☐ Immediate   ☐ 30 days   ☐ 60 days   ☐ Other

Consequences of failure to improve: ☐ Discipline up to and including termination   ☐ Suspension   ☐ Immediate termination

**SUPERVISOR SIGNATURE** _____  **DATE** _____

I HAVE READ THIS REPORT.

**EMPLOYEE SIGNATURE** _____  **DATE** _____

Last Offense: _____ DATE _____ NATURE OF INCIDENT _____ ACTION TAKEN

Other Offenses: _____ DATE _____ NATURE OF INCIDENT _____ ACTION TAKEN

Additional remarks: _____

**EXHIBIT 1**

**PERSONNEL DEPARTMENT SIGNATURE:** S. Connell  **DATE:** 6/14/15

Jacobs Printery • 501-745-2742 • FORM 754-V59

June 5, 2013

Early yesterday, I received a request for a meeting from Jerald Burroughs. Russell Wolfe also attended the meeting. Russell has provided the written statement attached.

Late this afternoon I met with Sheila Main in her office to discuss the statement. There are some valid points in the conversation I had with Sheila. I have checked the cabinets in the MR control room. I do wish they looked better, but that is all that is currently available. Sheila also has earlier in the year presented a request for a new computer desk/workstation that was denied. She stated that she was ok with that; at least until she went by the Respiratory Therapy area and saw the manager's office, the size of it, and all the new furnishings in the office. I think she makes a point in this, and maybe we need to revisit the request for something different for Sheila's office.

I did tell Sheila that I have seen the type of customer service she provides personally, and that I have heard it from patients. I am very appreciative of this customer service. I emphasized as the main point though my expectation for customer service extends to all we come in contact with, including our fellow employees. It is easier to do when things are less stressful, and everything goes smoothly; but the expectation I have for good customer service for all is still there no matter what circumstances surround us.

*Darrell Moore*
COO

— My meeting with Sheila was on Wednesday 16:20 – 17:15.

*DMoore*

6-4-13

      Russell and Jason are working on installing new cabinets in the MRI control rm. Shela asked for these cabinets to be installed as uppers only and maple. we could not locate the maple cabinets and installed HMI cabinets instead. Shela desided to voice her opinion, her statements are as follows.

      ( Those look like crap in there )
      ( I dont no why it takes so long to install so few cabinets )
      ( Im sending Jerald a nasty email ) this was said at least three times
      ( Why does it take two people to do that little of work ) this was said at x-ray front desk

staff to RLW + JW                  infront of her

      I _Russell wrote_ do not understand her reasons for talking to us the way that she chose to. I am having a difficult time training new employees with in the x-ray department because of the comments and just plain negative attitudes. Our goals when working in any department is to be clean and efficient no matter what the job is. Shela is slowing our progress down and makeing the jobs harder to do because of her poor attitude. We do not appreciate being talked down to by any one, even more when we are doing what we were asked to do.


_Russell Wolfe_
Russell Wolfe

# TESTER LAW FIRM, P.A.
## Attorney at Law

KENT TESTER

230 Hwy. 65 North, Suite 7
Clinton, Arkansas 72031
Telephone (501) 745-7077
Toll-free (877) 745-7077
Fax (501) 745-6161

kent@testerlaw.com

June 5, 2015

**VIA FACSIMILE 745-9501**
David Deaton, CEO
Ozark Health Medical Center
2500 Hwy 65 S
Clinton, AR 72031

RE: Sheila Main employment termination

Dear Mr. Deaton:

Please accept this missive as my letter of representation of Ms. Sheila Main regarding her termination from Ozark Health Medical Center. The purpose of this letter is two-fold. The first to put you on notice that a request to preserve all employment records pursuant to Title 29 of the Code of Federal Registry as well as other state and federal regulations is mandated. The destruction or altering of any employment records regarding Ms. Sheila Mann or other employees or former employees similarly situated to her may be cause for sanctions by a court of competent jurisdiction for the willful destruction or altering of evidence in a pending case.

Ms. Main has retained me to pursue all remedies available to her for wrongful termination which includes: pursuing relief through the EEOC. If Ozark Health Medical Center is interested in discussing a settlement of Ms. Main's claim for age and sex discrimination as well as other possible basis for wrongful termination, please advise me by the close of business of June 12th, 2015.

Sincerely yours,

Kent Tester, P.A.

KT:ah/MISC 15
cc: Sandra Main

**EXHIBIT 2**



# Ozark Health

2500 Highway 65 South • Clinton, AR • 72031
Phone: 501.745.7000 • www.ozarkhealthinc.com

June 11, 2015

**VIA FACSIMLE 501-745-6161**
Kent Tester
Tester Law Firm
230 Highway 65 North, Suite 7
Clinton, AR 72031

RE: Sheila Main Employment Termination

Dear Mr. Tester:

In response to your letter dated June 5, 2015 regarding settlement of Ms. Sheila Main's termination from Ozark Health Medical Center, the following is offered:

- 12 weeks of severance pay
- Agree not to contest application for unemployment benefits
- Categorize separation as a "resignation" instead of "involuntary"
- Provide a favorable letter of reference concerning skills as a Radiologic Technologist

This offer is contingent on Ms. Main signing a full release of claims prepared by Ozark Health Medical Center's attorney, which would include a no-rehire provision.

Please advise me by the close of business of June 18th if these terms are accepted.

Sincerely,

OZARK HEALTH MEDICAL CENTER

David W. Deaton
Chief Executive Officer

EXHIBIT 3