# United States Court of Appeals
*For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

May 11, 2020

Mr. Allen Cole Dobson
BAXTER & JEWELL
Ste. 210
Suite 210
1 Information Way
Little Rock, AR  72202

     RE:  19-1393  Sheila Main v. Ozark Health Inc

Dear Counsel:

     The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion. The opinion will be released to the public at 10:00 a.m. today. Please hold the opinion in confidence until that time.

     Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc <u>must</u> be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. No grace period for mailing is allowed, and the date of the postmark is irrelevant for pro-se-filed petitions. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

                                         Michael E. Gans
                                         Clerk of Court

CRJ

Enclosure(s)

cc:    Mr. John D. Coulter
        Mr. William Stuart Jackson
        Mr. Gary D. Marts Jr.
        Mr. Jim McCormack
        Ms. Carolyn Wheeler
        Ms. Regina A. Young

     District Court/Agency Case Number(s):  4:17-cv-00605-SWW

# United States Court of Appeals
*For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

May 11, 2020

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

RE: 19-1393  Sheila Main v. Ozark Health Inc

Dear Sirs:

An opinion was filed today in the above case.

Counsel who represented the appellant was Allen Cole Dobson, of Little Rock, AR.,  John D. Coulter, of Little Rock, AR.,  Carolyn Wheeler of Washington, DC.

Counsel who represented the appellee was Regina A. Young, of Little Rock, AR.,  Gary D. Marts, Jr.,  of Little Rock, AR.

The judge who heard the case in the district court was Honorable Susan Webber Wright. The judgment of the district court was entered on January 29, 2019.

If you have any questions concerning this case, please call this office.

Michael E. Gans
Clerk of Court

CRJ

Enclosure(s)

cc:  Lois Law
     MO Lawyers Weekly

District Court/Agency Case Number(s):   4:17-cv-00605-SWW

United States Court of Appeals

For the Eighth Circuit

_____

No. 19-1393
_____

Sheila Main

*Plaintiff - Appellant*

v.

Ozark Health, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: January 15, 2020
Filed: May 11, 2020

_____

Before COLLOTON, SHEPHERD, and ERICKSON, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Sheila Main brought this lawsuit against her former employer, Ozark Health, Inc. (Ozark), alleging age and sex discrimination in violation of the Age Discrimination in Employment Act of 1967 (ADEA), Title VII of the Civil Rights Act of 1964 (Title VII), and the Arkansas Civil Rights Act of 1993 (ACRA).  The district

court[1] granted summary judgment in favor of Ozark.  Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

In October 2005, Ozark hired Main as the radiology manager for its medical center in Clinton, Arkansas.  At the time, Main was fifty-one years old and had her bachelor's degree in radiologic technology, her master's degree in management, and over thirty years of experience as a radiologic technologist and manager.  Main's duties as radiology manager included managing and scheduling personnel, managing the budget, working with the radiologists, administrating the Picture Archiving and Communication System, performing quality control, managing and renegotiating radiology department contracts, writing grants, and maintaining regulatory compliance.  Main's non-managerial duties included performing mammographies, filling in as an X-ray and CT scan technologist as needed, and handling equipment repairs.

In July 2012, Darrell Moore became Ozark's chief operating officer and Main's direct supervisor.  In his first conversation with Main, Moore asked whether Main had a succession plan.  Shortly thereafter, Moore asked Main if she thought Jamie Cates, a male employee who is twenty-two years younger than Main and who was working under Main's supervision at the time, would be a good replacement for her.

Moore asserted that, during his time as Main's supervisor, he received several complaints about Main's behavior from radiology staff members and heads of other departments.  For example, he testified that, in 2013, Dawn Messer, a radiology staff member, complained to him that Main was bullying her to obtain her ultrasound

---

[1]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

-2-

certification.[2] Also in 2013, an Ozark maintenance employee submitted a written complaint against Main, claiming that she made the following comments to him while he was installing cabinets in the radiology department: "[T]hose look like crap in there"; "I don[']t no [sic] see why it takes so long to install so few cabinets"; "I[']m sending Jerald[, the head of the maintenance department,] a nasty email"; and "Why does it take two people to do that little of work." Moore spoke to Main about the maintenance employee's complaint. He explained to her that, while he was "very appreciative of [the] customer service" Main provided to her patients, Moore expected her to treat all persons, including her fellow employees, in that same manner.

Moore also testified that, as Main's supervisor, he experienced issues with Main's performance. He testified that two local clinics complained to him that they were not receiving or were not able to access reports from the radiology department. Moore noted, however, that Main resolved the issues after he spoke to her about them. Moore also testified that Main failed to complete certain tasks he had given her, such as providing him with benchmarking information, expanding ultrasound coverage, and cross-training radiology staff. Despite these complaints and performance concerns, Moore provided Main with positive end-of-year performance evaluations for 2012, 2013, and 2014.

On April 15, 2015, Brian Price, a representative from athenahealth, Inc. (Athena), held a meeting at Ozark's medical center to demonstrate Athena's products to Ozark. Main and Moore were both present at the meeting. During the meeting,

---

[2]Moore testified that he also received complaints from three other radiology staff members—Shantal Fikes, Jeffrey Donnow, and Jami Anne Johnson. However, Moore explained that Fikes complained about Main denying her time-off request; she did not complain about Main's behavior. Further, Moore could not remember the substance of Donnow's and Johnson's complaints, and he clarified that Johnson never submitted an oral or written complaint to him directly.

-3-

Main asked Price several questions about how Athena's program could be used in the radiology department. Moore testified that he considered Main's questions at the meeting to be patronizing and inappropriate. He explained that every time Price responded to one of Main's questions, Main would rebut his answer, sometimes by interrupting him. Similarly, Jason Markle, Ozark's head of information technology, testified that Main's questions made the meeting attendees uncomfortable and that he observed Main repeatedly roll her eyes at Price's responses to her questions. After the meeting, Main sent Price an email to ask follow-up questions about Athena's products. At the end of her email, Main stated, "PS: we are Radiologic Technologists not Radiology Technicians. You might want to pass that on." Moore, who was copied on the email, testified that he found the end of Main's email to be condescending.

On June 3, 2015, Moore met with Main and informed her that he wanted a change in management and to go in a "different direction." Moore offered Main the options of either retiring or being terminated. He added that, if Main announced her retirement that day, Ozark would potentially allow her to perform as-needed work in the radiology department. Main refused to retire and was terminated that day. Main was sixty-one years old at the time. Immediately thereafter, Cates assumed Main's responsibilities. A few months later, Cates officially replaced Main as Ozark's radiology manager.

Following her termination, Main filed a discrimination complaint with the Equal Employment Opportunity Commission (EEOC). After the EEOC issued a dismissal and notice of rights letter, Main filed this action in the district court asserting the same claims as asserted in her EEOC complaint: that Ozark had

-4-

terminated her employment based on her age and sex, in violation of the ADEA, Title VII, and the ACRA.[3]

Ozark moved for summary judgment on all claims, arguing that it had terminated Main for a legitimate, nondiscriminatory reason—specifically, Main's history of rude and insubordinate behavior that culminated with the Athena meeting. In response, Main argued that Ozark's asserted reason for her termination was mere pretext for age and sex discrimination. The district court granted summary judgment in favor of Ozark, finding that Main failed to present a genuine issue of material fact as to whether Moore honestly believed that Main was rude and inappropriate at the Athena meeting. In addition, the district court found that Main must do more than discredit Ozark's reason for termination; she must also demonstrate that the circumstances permit a reasonable inference of discriminatory animus. This appeal follows.

II.

We "review[] de novo a grant of summary judgment," Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc), "viewing the evidence and drawing all reasonable inferences in the light most favorable to [Main], the nonmoving party." Kirkeberg v. Canadian Pac. Ry., 619 F.3d 898, 903 (8th Cir. 2010). "We will affirm if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Lindeman v. St. Luke's Hosp. of Kan. City, 899 F.3d 603, 605 (8th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). Main argues that the district court erred in granting summary judgment in favor of Ozark because she offered evidence demonstrating a genuine issue of material fact as to

---

[3] Main also brought claims under the Americans with Disabilities Act and the Equal Pay Act. As expressly stated in her opening brief, Main does not challenge the dismissal of those claims on appeal.

-5-

whether Ozark's proffered reason for Main's termination is mere pretext for intentional discrimination.

Title VII and the ACRA prohibit employers from discriminating against employees based on sex, see 42 U.S.C. § 2000e-2(a)(1); Ark. Code Ann. § 16-123-107, and the ADEA prohibits employers from discriminating against employees based on age, see 29 U.S.C. § 623. A plaintiff alleging discrimination under these statutes may survive an employer's motion for summary judgment by producing either direct or circumstantial evidence of discrimination. See Gibson v. Am. Greetings Corp., 670 F.3d 844, 855-56 (8th Cir. 2012) (noting plaintiff can present direct or circumstantial evidence of age discrimination to survive motion for summary judgment on ADEA claim); McCullough v. Univ. of Ark. for Med. Scis., 559 F.3d 855, 860 (8th Cir. 2009) (noting that Title VII and ACRA claims are "governed by the same standards," and that a plaintiff can present direct or circumstantial evidence of sex discrimination to survive motion for summary judgment on such claims). Where, as here, the plaintiff relies on circumstantial evidence only, she must proceed under the three-step burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Gibson, 670 F.3d at 853-56 (analyzing Title VII, ACRA, and ADEA discrimination claims under the McDonnell Douglas framework).

At step one of the McDonnell Douglas framework, the plaintiff must establish a prima facie case of discrimination. Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1134-35 (8th Cir. 1999) (en banc). In its motion for summary judgment, Ozark conceded that Main sufficiently alleged a prima facie case of age and sex discrimination, and it does not argue otherwise on appeal. Therefore, we assume without deciding that Main satisfied her burden at step one.

At step two, the burden shifts to Ozark to articulate a legitimate, nondiscriminatory reason for Main's termination. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993). Ozark satisfied this burden by presenting

-6-

evidence that Moore, the decisionmaker, terminated Main because of "[h]er rudeness and insubordination [which] culminated in a meeting with Athena Health, . . . in which she behaved abominably." R. Doc. 37, at 1.

At step three, "the burden shifts back to [Main] to show that [Ozark's] proffered reason is merely a pretext for intentional discrimination." EEOC v. Prod. Fabricators, Inc., 763 F.3d 963, 969 (8th Cir. 2014). Main's "burden to show pretext 'merges with the ultimate burden of persuading the court that [she was] the victim of intentional discrimination.'" Torgerson, 643 F.3d at 1046 (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981)). Main argues that she has demonstrated that a genuine issue of material fact exists regarding pretext by producing evidence to show that Ozark's asserted reason for her termination is unworthy of credence. See id. at 1047 (noting that one way "a plaintiff may demonstrate a material question of fact regarding pretext" exists is by "show[ing] that the employer's explanation is unworthy of credence because it has no basis in fact" (internal quotation marks and alteration omitted)). Main alleges that she has made this showing by presenting evidence disputing Ozark's assertions that (1) she behaved inappropriately at the Athena meeting and (2) she had a history of rude and insubordinate behavior.

A.

Main first argues that she has demonstrated a genuine issue of material fact exists as to pretext by showing that she did not behave inappropriately at the Athena meeting. Specifically, Main presented her own testimony and the testimony of other meeting attendees that she acted professionally and was neither rude nor condescending, as well as Price's declaration that he does "not recall anyone from Ozark Health, either orally or in writing, treating [him] in a rude, condescending, or unprofessional manner during or after" the Athena meeting.

-7-

While a plaintiff "may demonstrate a material question of fact regarding pretext" by "show[ing] that the employer's explanation is unworthy of credence because it has no basis in fact," id. (internal quotation marks and alteration omitted), Main's reliance on her own testimony and the testimony of others to show that she was not rude or inappropriate at the Athena meeting indicates that she

> misunderstands what it means to prove the falsity of the employer's explanation. If an employer, in explaining a termination, says it believed that the employee violated company rules, then proof that the employee never violated company rules does not show that the employer's explanation was false. That proof shows only that the employer's belief was mistaken. To prove that the employer's explanation was false, the employee must show the employer did not truly believe that the employee violated company rules.

Pulczinski v. Trinity Structural Towers, Inc., 691 F.3d 996, 1003 (8th Cir. 2012). While the testimony of other meeting attendees may show that those individuals did not find Main's behavior at the Athena meeting to be rude or inappropriate, that evidence is insufficient to show a genuine issue of material fact exists as to whether Moore, the decisionmaker, truly believed that Main's behavior at the meeting was rude or inappropriate.

On appeal, Main argues that the legal principle explained in Pulczinski—that, to show an employer's explanation is unworthy of credence, an employee must show the employer did not truly believe that the employee engaged in the conduct justifying termination, which Main refers to as the "honest belief" rule—is inapplicable here because Moore's asserted reason for terminating Main is based on his first-hand observations of Main at the Athena meeting. She argues that the "honest belief" rule only applies when a decisionmaker relies on reports from third parties in taking an adverse employment action. But we have never held that the applicability of this "honest belief" rule is so limited, nor do we see a reason to limit its applicability in

-8-

this case. The "honest belief" rule is really just an aspect of the plaintiff's burden at step three, and we apply it because "federal courts do not sit as a super-personnel department that reexamines an entity's business decisions." Wilking v. County of Ramsey, 153 F.3d 869, 873 (8th Cir. 1998) (alterations omitted) (quoting Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 973 (8th Cir. 1994)). We have repeatedly explained that "it is not our province to decide whether [the employer's] reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." Id. (quoting Giannopoulos v. Brach & Brock Confections, Inc., 109 F.3d 406, 411 (7th Cir. 1997)). Therefore, while a plaintiff may establish pretext by showing that the employer did not truly believe the employee engaged in the conduct justifying termination, a plaintiff may not establish pretext simply by showing that the employer's "honest" belief was erroneous, unwise, or even unfair. This is true regardless of whether the employer's explanation is based on first-hand knowledge or third-party reports.

Here, while the testimony of other meeting attendees might show that Moore's observations of Main's behavior at the Athena meeting were mistaken or unfair, the testimony does not show that Moore did not truly believe that Main's behavior at the meeting was rude or inappropriate. Accordingly, Main has failed to demonstrate a genuine issue of material fact exists regarding pretext.

B.

Main also argues that she has demonstrated a genuine issue of material fact exists as to pretext by showing that she did not have a history of rude and insubordinate behavior. She presented affidavits from current and former Ozark employees stating that they never witnessed Main being rude, condescending, or behaving inappropriately to anyone. As with the testimony of other Athena meeting attendees, the fact that other Ozark employees did not consider Main to have a history of rude and insubordinate behavior has no bearing on whether Moore, the

-9-

decisionmaker, truly believed that Main had a history of rude and insubordinate behavior. See McCullough, 559 F.3d at 861-62 ("The critical inquiry in discrimination cases like this one is not whether the employee actually engaged in the conduct for which he was terminated, but whether the employer in good faith believed that the employee was guilty of the conduct justifying discharge.").

Main also presented her year-end performance evaluations from 2012 through 2014, which were prepared by Moore. She argues that these positive evaluations are inconsistent with Moore's decision to terminate her. But "evidence of a strong employment history will not alone create a genuine issue of fact regarding pretext and discrimination." Strate v. Midwest Bankcentre, Inc., 398 F.3d 1011, 1020 (8th Cir. 2005). In any case, the culminating event that led to Main's termination—the Athena meeting—took place after Moore prepared these performance evaluations. See Lindeman, 899 F.3d at 607 (noting that the favorable review was made prior to the conduct justifying termination and finding that "a review issued without that knowledge is irrelevant to whether [the employee] was actually terminated for the given reason" (internal quotation marks and alteration omitted)). Therefore, the evaluations are not inconsistent with the reason offered by Moore for his decision to terminate Main.

Main also argues that the fact that the performance evaluations do not mention any complaints or concerns about her behavior affirmatively demonstrates that Ozark invented a history of rude and insubordinate behavior. Similarly, she argues that the general lack of documentation of a history of rude and insubordinate behavior is evidence of pretext. In making this argument, Main relies on the Fifth Circuit's holding in Lloyd v. Georgia Gulf Corp. that a jury can reasonably infer pretext "when an employer's stated motivation for an adverse employment decision involves the employee's performance, but there is no supporting documentation[.]" 961 F.2d 1190, 1195 (5th Cir. 1992). Even if we were to agree with the Fifth Circuit's holding, the facts of this case are distinguishable from Lloyd and do not permit a jury to

-10-

reasonably infer pretext. First, the employer in Lloyd "failed to produce a single document to show that Lloyd's supervisors were unsatisfied with his work." Id. at 1194. Here, while Ozark's documentation of Main's history of rude and insubordinate behavior is certainly limited, the record is not devoid of such evidence. Ozark provided a June 4, 2013 written complaint[4] from a maintenance employee stating that Main told him that the cabinets he had installed "look like crap," that she did not "see why it [took] so long to install so few cabinets" or why it took "two people to do that little of work," and that she was "sending Jerald[, the head of the maintenance department,] a nasty email." Second, in Lloyd, the employer's sole reason for terminating Lloyd was his poor performance. See id. Here, as the district court correctly noted, the culminating event that resulted in Main's termination was her behavior at the Athena meeting; Main's history of rude and inappropriate behavior simply provided the context in which Moore observed and interpreted that behavior. As discussed above, Main failed to show that Ozark's primary justification for her termination is unworthy of credence. In light of these facts, a jury cannot reasonably infer pretext simply from Ozark's limited documentation of Main's history of rude and insubordinate behavior.

Finally, Main attempted to demonstrate issues of fact regarding certain events that Ozark cited as forming Main's history of rude and insubordinate behavior. For example, Main presented an email from Moore, dated December 8, 2014, to show that she did, in fact, satisfy his request for benchmarking information. She also presented

---

[4]The complaint is included in a report that consists of three pages: a cover page, the maintenance employee's written complaint, and Moore's notes from his meeting with Main about the complaint. Main argues that she has shown that the report was fabricated, because the cover page on the report is dated June 14, 2015, which was after her termination. However, the substantive portions of the report—the maintenance employee's complaint and Moore's meeting notes—are dated June 4, 2013 and June 5, 2013, respectively. The cover page contains no material information, and the fact that it is dated two years later does not demonstrate a genuine issue of material fact regarding pretext.

-11-

her own testimony to show that all radiologic technologists were cross-trained prior to her termination. "Small factual disputes about the underlying events that made up [Main's history of rude and insubordinate behavior] could only create the 'metaphysical' kind of doubt that the Supreme Court decried in [Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)]." Hoffman v. MCA, Inc., 144 F.3d 1117, 1125 (7th Cir. 1998). Even if there is a factual dispute as to whether Main completed tasks requested of her, Main either admits or does not dispute several other facts that provided Moore with ample grounds to find that Main had a history of rude and insubordinate behavior, including the maintenance employee's complaint, Messer's complaint, and the local clinics' complaints. Accordingly, Main has failed to show that Ozark's assertion that she had a history of rude and insubordinate behavior is unworthy of credence.

C.

Finally, even if we were to find that Main has shown that Ozark's justifications are unworthy of credence, Ozark would nonetheless be entitled to summary judgment. "The ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct.' In other words, '[i]t is not enough . . . to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146-47 (2000) (quoting Hicks, 509 U.S. at 519, 524). "We have recognized that the showing of pretext necessary to survive summary judgment requires more than merely discrediting an employer's asserted reasoning for terminating an employee." Johnson v. AT&T Corp., 422 F.3d 756, 763 (8th Cir. 2005). Main "is also required to show that the circumstances permit a reasonable inference to be drawn that the real reason [Ozark] terminated [her] was because of" her age and sex. Id.

-12-

Main argues that the circumstances are sufficient to permit an inference of discrimination because Moore asked Main about her succession plan in 2013, gave her the option of retiring or being terminated, and replaced her with a male employee who is twenty-two years her junior. However, the mere mention or suggestion of retirement and, relatedly, a succession plan shows "no more than that [Moore] wanted [Main] to leave" the company. Ziegler v. Beverly Enters.-Minn., Inc., 133 F.3d 671, 676 (8th Cir. 1998). Finally, that Main's successor is male and twenty-two years younger than her cannot, by itself, create an inference that Main was terminated based on her sex and age. See Pottenger v. Potlatch Corp., 329 F.3d 740, 748 (9th Cir. 2003) ("Without more . . . the fact that Nelson[, the replacement,] was younger than Pottenger[, the terminated employee,] does not create a triable issue of pretext."); Dunaway v. Int'l Bhd. of Teamsters, 310 F.3d 758, 767 (D.C. Cir. 2002) ("The . . . decision to replace her with a younger woman is insufficient for a jury to conclude that she lost out *because of [her] age*." (internal quotation marks omitted)); Cianci v. Pettibone Corp., 152 F.3d 723, 727 (7th Cir. 1998) ("While Cianci also points to her replacement by a male as evidence of gender discrimination, this is simply insufficient to demonstrate that Cianci's gender motivated the decision to terminate her.").

Main has failed to satisfy her burden at step three of the McDonnell Douglas framework. Accordingly, Ozark is entitled to summary judgment on all claims.

III.

For the foregoing reasons, we affirm.

_____

# Abigail Temple

| | |
|---|---|
| **From:** | ca08ml_cmecf_Notify@ca8.uscourts.gov |
| **Sent:** | Monday, May 11, 2020 8:20 AM |
| **Subject:** | 19-1393 Sheila Main v. Ozark Health Inc "Signed Opinion Filed" (4:17-cv-00605-SWW) |

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing.

## Eighth Circuit Court of Appeals

**Notice of Docket Activity**

The following transaction was filed on 05/11/2020

| | |
|---|---|
| **Case Name:** | Sheila Main v. Ozark Health Inc |
| **Case Number:** | 19-1393 |
| **Document(s):** | Document(s) |

**Docket Text:**
OPINION FILED - THE COURT: Steven M. Colloton, Bobby E. Shepherd and Ralph R. Erickson AUTHORING JUDGE:Bobby E. Shepherd (PUBLISHED) [4911528] [19-1393] (Clifford Jackson)

**Notice will be electronically mailed to:**

Mr. John D. Coulter: john@mcmathlaw.com, marilyn@mcmathlaw.com, shelia@mcmathlaw.com
Mr. Allen Cole Dobson: adobson@bjd-law.com, rharness@bjd-law.com
Mr. William Stuart Jackson, General Counsel: wjackson@wlj.com, lclark@wlj.com, cotwell@wlj.com
Mr. Gary D. Marts, Jr.: gmarts@wlj.com, pjones@wlj.com
Mr. Jim McCormack, Clerk of Court: ared_appeals@ared.uscourts.gov
Ms. Carolyn Wheeler: wheeler@kmblegal.com
Ms. Regina A. Young: ryoung@wlj.com, apye@wlj.com, lclark@wlj.com, tking@wlj.com
MO Lawyers Weekly: michaelh@mesjassociates.com, clash@molawyersmedia.com
West Publishing: us08@westdcs.west.thomson.com

The following document(s) are associated with this transaction:
**Document Description:** Counsel Opinion Letter
**Original Filename:** /opt/ACECF/live/forms/CliffordRJackson_191393_4911528_CounselOpinionLetters_285.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1105112566 [Date=05/11/2020] [FileNumber=4911528-1]
[3329d8b9c0037f39552de7fc1ba576da992fe43c044a82b6306cce0f1ad25bff79832d1066f245c7d1c528e322373baca6fb
ec88f923a48454c926d84c731eac]]
**Recipients:**

- Mr. John D. Coulter
- Mr. Allen Cole Dobson
- Mr. William Stuart Jackson, General Counsel
- Mr. Gary D. Marts, Jr.
- Mr. Jim McCormack, Clerk of Court
- Ms. Carolyn Wheeler
- Ms. Regina A. Young

**Document Description:** Letter To Publishing
**Original Filename:** /opt/ACECF/live/forms/CliffordRJackson_191393_4911528_LettersToPublishing_284.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1105112566 [Date=05/11/2020] [FileNumber=4911528-2]
[0efd81a1f0324b2ab3647afee8c87a60a94b69a1e38128f09aca4819c23db1471c23252293004a9679fe16b689fd1d14020
20d3101d23bfe89b2b208f0ff246b]]
**Recipients:**

- MO Lawyers Weekly
- West Publishing

**Document Description:** Published Opinion
**Original Filename:** 191393P.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1105112566 [Date=05/11/2020] [FileNumber=4911528-0]
[5493ede8e4b961858f67f21eed0b9603142ecd1e546a08a34bb72e18281f948cfe66aa9e433849df1f42afe7c1b86067453
4f72636d8ee58c5dad8196bd84193]]

The following information is for the use of court personnel:


**DOCKET ENTRY ID:** 4911528
**RELIEF(S) DOCKETED:**
   for publication
**DOCKET PART(S) ADDED:** 6529026, 6529027, 6529028